# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2005 APR 25  A 9: 36

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| KENITH BURDETT,             ) | |
|                              ) | |
|        **Plaintiff,**         ) | |
|                              ) | |
| **VS.**                           ) | |

KENITH BURDETT,                         )

        **Plaintiff,**                          )

VS.                                                )

                                 )

**AMERICAN EDUCATION**               )    **CASE NO.** 2 : 05 cv 377 - F
**SERVICES CORPORATION, CHASE**    )
**MANHATTAN BANK, USA, N.A.,**        )
**EQUIFAX INFORMATION SERVICES,**   )
**LLC., THE EDUCATION RESOURCE**    )
**INSTITUTE, INC., and TRANSUNION,**  )
**LLC;**                                            )
                                 )

      **Defendants.**                             **JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Kenith Burdett, by and through the undersigned attorneys, brings this action against Defendants:

1. American Education Services Corporation ("AES")

2. Chase Manhattan Bank, U.S.A, N.A. ("Chase")

3. Equifax Information Services, LLC ("Equifax")

4. The Education Resource Institute, Inc. ("TERI")

5. TransUnion, LLC ("TransUnion")

on the grounds and in the amounts set forth herein.

## PRELIMINARY STATEMENT

1

1.     This is an identity theft case. For the last several years it has become well known in the national media that identity theft is a growing and nationwide problem. For example in August of 2000, the FBI called identity theft the fastest-growing white-collar crime in the nation and estimated that over 500,000 people will be victims that year.[i] Identity theft has proved to be a growth industry because in July 2003 two studies, *Gartner Research* and *Harris Interactive*, estimated that approximately 7 million people were victims of identity theft in the prior 12 months[ii]. Victims spend an average of 600 hours recovering from this crime often over period of years.[iii]

2.     According to the U.S. Department of Justice, "Identity theft refers to crimes in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception, typically for economic gain."

3.     Plaintiff brings this action for damages based upon Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq., and claims under Alabama law. Plaintiff seeks actual damages, punitive damages, costs and attorneys fees.

## THE PARTIES

4.     Plaintiff is a natural person and consumer, a resident and a citizen of Barbour County in the State of Alabama and of the United States.  Plaintiff is a "consumer" as defined by § 1681a(c) of the FCRA.

5.     Defendant TRANSUNION is a corporation incorporated under the laws of Illinois. It has its principal place of business in Illinois.  It is licensed to do business in Alabama and it does business in this district.

2

6.     TRANSUNION is a consumer reporting agency as defined in § 1681 of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in § 1681a(d) of the FCRA, to third parties.

7.     TRANSUNION dispenses such consumer reports to third party subscribers under the contract for monetary compensation.

8.     The Defendant, EQUIFAX INFORMATION SERVICES, LLC., (hereinafter referred to as the "EQUIFAX") is a corporation incorporated under the laws of Georgia.  It has its principal place of business in Georgia.  It is licensed to do business in Alabama and it does business in this district.

9.     Defendant EQUIFAX is a consumer reporting agency as defined in § 1681a(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in § 1681a(d) of the FCRA, to third parties.

10.     Defendant EQUIFAX dispenses such consumer reports to third party subscribers under the contract for monetary compensation.

11.     The Defendant, CHASE is a corporation doing business in Alabama and incorporated under the laws of Delaware.  Its principal place of business is in Delaware and it does business in this district.

12.     Defendant CHASE is a furnisher of information as defined in 15 U.S.C. § 1681s-2 of the FCRA and/or a user of consumer credit reports.

3

13.     The Defendant, AES is a corporation doing business in Alabama and incorporated under the laws of Pennsylvania.  Its principal place of business is in Pennsylvania and it does business in this district.

14.     Defendant AES is a furnisher of information as defined in 15 U.S.C. § 1681s-2 of the FCRA and/or a user of consumer credit reports.

15.     The Defendant, TERI is a non profit corporation doing business in Alabama and incorporated under the laws of Massachusetts.  Its principal place of business is in Massachusetts and it does business in this district.

16.     Defendant TERI is a furnisher of information as defined in 15 U.S.C. § 1681s-2 of the FCRA and/or a user of consumer credit reports.

## JURISDICTION AND VENUE

17.     This court has jurisdiction over this matter based upon 28 U.S.C. § 1331, in that this dispute involves predominant issues of federal law. Defendants are liable to Plaintiff pursuant to the provisions of the "Consumer Credit Protection Act of 1968," 15 U.S.C. § 1601, et seq., as well as other applicable law.

18.     Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

19.     Plaintiff first became aware that he had been a victim of identity theft after he attempted to obtain financing from a mortgage company on or about October, 2004.

4

20.     Plaintiff was denied the loan based on adverse information on his credit file and has subsequently been denied other credit.

21.     Adverse information contained in the consumer credit report by the Defendants Equifax and TransUnion stated and implied that Plaintiff had numerous student loan accounts and credit cards.

22.     Many of these did not belong to him.

23.     For example, Plaintiff had approximately fourteen (14) student loan accounts in excess of over $125,000.00 (one hundred and twenty-five thousand dollars) being reporting on his credit file by TransUnion, Experian and Equifax.

24.     Plaintiff also had several credit card accounts reporting on his consumer file: a Citizens Bank Account, # 554514011127..., a GMAC Account # 34090442... and a Chase Bank Account, # 518338198001.

25.     Plaintiff, after a careful review of his credit report, discovered the student loan accounts were being reported by a company named AES.

26.     On November 2, 2004, Plaintiff sent in a letter informing Defendant AES of the numerous student loan accounts reported on his consumer file and informed them that these accounts did not belong to him.  Plaintiff also requested a copy of all documentation regarding the loans that evidence him as signing or co-signing for them.

27.     On November 17, 2004, Plaintiff immediately contacted the Eufaula Police Department and filed a report regarding the student loans and other accounts fraudulently opened in his name.

5

28.     Also on that same date, Plaintiff sent in dispute letters listing the adverse accounts to Equifax, TransUnion, Experian, and AES and requested a reinvestigation and removal of these accounts.

29.     On information and belief defendant AES contracted with defendant TERI to perform some or all of the obligations of AES mandated by the FCRA and by 15 U.S.C. § 1681s-2(b).

30.     Plaintiff included a Forgery/Identity Theft Affidavit with his reinvestigation request, and copies of his social security card and drivers license.

31.     Plaintiff's dispute letters stated that he had been a victim of identity theft, that he never authorized these student loans or the credit cards to be taken out in his name that these accounts were fraudulently opened and should be removed from his credit file.

32.     On or about November 30, 2004, Plaintiff received a copy of his consumer report from Equifax.

33.     The report stated that the numerous AES student loan accounts were reported as "Consumer Disputes - Reinvestigation in Process."

34.     The report also stated that the Chase account, number 518338198001* was "Consumer Disputes - Reinvestigation in Process."

35.     Plaintiff assumed by the report from Equifax that the erroneous accounts were being investigated and that all of them would soon be deleted from his credit file.

36.    Plaintiff, on or about December 7, 2004 received a reinvestigation report from Equifax verifying the Chase account, number 518338198001*.

37.    Equifax verified that the Chase account belonged to the Plaintiff, when in fact the Plaintiff never opened a Chase credit card account.

38.    According to the report, the additional disputed accounts were not currently being reported on the credit file.

39.    On or about December 13, 2004, Plaintiff received an additional reinvestigation report from Equifax verifying separately each disputed AES student loan account.

40.    Equifax failed to remove the inaccurate student loan accounts and continued to report this on the Plaintiff's consumer file after a reinvestigation request was initiated and documentation was supplied to Equifax.

41.    On or about December 8, 2004, Plaintiff received a reinvestigation report from Experian (which is not a defendant herein), deleting all the AES student loan accounts, the Citizens Bank account, Chase account, and GMAC account.

42.    Defendant TransUnion never reported the results of its reinvestigation. TransUnion did not perform a proper investigation and in fact never sent a reinvestigation report to the Plaintiff within the statutory time limit.

43.    Plaintiff also received a letter from Peter Konstantilakis, Fraud examiner of TERI Loan Origination regarding the fraud claim that the Plaintiff initiated through AES on or about December 6, 2004.

44.     Plaintiff followed the detailed instructions of the letter, which included filing out documents provided to the Plaintiff, such as an Affidavit of Forgery, Missing or Unauthorized Endorsement Affidavit, and a detailed letter of the forgery.  The letter also suggested for the Plaintiff to call the Live Oak Florida Police Department.

45.     Plaintiff contacted the Live Oak Florida Police Department and filed a complaint.

46.     Curious to see the results of the reinvestigation by the Defendants, Plaintiff on or about December 29, 2004 ordered and received a copy of his credit report.

47.     The adverse and erroneous information was still being reported by Equifax.

48.     There were approximately fifteen (15) student loan accounts and the Chase account, number 5183381980013389 still being reported by Equifax.

49.     Also, TransUnion was reporting an AES/CHARTRBK student loan account, number 42098035500014 and the Chase account, number 5183381980013389.

50.     Plaintiff applied for a loan at Compass Bank on or about January, 2005.

51.     Plaintiff received a denial letter based on information on his TransUnion report.

52.     Plaintiff ordered a free copy of his TransUnion report and received a copy on or about February 15, 2005.

53.     Adverse information contained in the consumer credit report by Defendant TransUnion still contained the Chase account, number 5183381980013389.

54.     Plaintiff, on or about March 6, 2005 received a second letter from TERI Loan Origination regarding the fraud claim initiated through AES.

8

55.    The letter and documentation was identical to the correspondence that the Plaintiff received from TERI on December 6, 2004.

56.    Plaintiff had already responded to the first letter sent to him on December 6, 2004 and has had numerous phone conversations with agents at TERI regarding the student loan accounts.

57.    Plaintiff applied for credit with First Bankcard on or about March, 2005.

58.    Plaintiff received an adverse action letter which stated that the Plaintiff was denied credit through First Bankcard because of adverse information contained on his consumer file reported by CSC Credit Services, Inc., which is a reseller of Equifax credit reports.

59.    After a series of credit denials and the failure to remove the inaccurate and adverse information contained on the Plaintiff's consumer reports, the Plaintiff's only alternative to correct his consumer reports was to file this action.

60.    The Plaintiff has suffered damages, including but not limited to, the loss of credit, the loss of the ability to purchase and benefit from credit, mental suffering, and emotional pain as a result of Defendants' publication of this adverse credit information.

61.    Defendants have repeatedly attributed adverse credit information to the Plaintiff that does not belong to him.

62.    Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of the Defendants.

63. The presence of the numerous inaccurate trade-lines on his credit report adversely affects his good name and creditworthiness.

64. Defendants Equifax and TransUnion have published lower credit scores about Plaintiff based on its inclusion of false data in Plaintiff's consumer credit reports.

65. Defendants Equifax and TransUnion have published false adverse action codes about Plaintiff based on its inclusion of false data in Plaintiff's consumer credit reports.

66. Defendants Equifax and TransUnion prepared, issued, assembled, transferred and otherwise reproduced consumer reports, regarding the Plaintiff, as defined in the FCRA 15 U.S.C. 1681a.

67. Defendants Equifax and TransUnion maintain a contract with smaller affiliate bureaus, legal and contractual agents, wherein they share data and other assets.

68. Defendants Equifax and TransUnion allow their credit reporting database, which takes in, warehouses, maintains and manipulates data supplied by their subscribers, to be accessed by their affiliate bureaus and subscribers.

69. Defendants Equifax and TransUnion and their affiliate bureaus and subscribers have access to consumer credit reports, prepared by the Credit Reporting Agencies ("CRA"), from the same data pool, in the same database, and Defendants Equifax and TransUnion have a duty to each consumer, including Plaintiff, about whom they report, as provided for in the FCRA.

70. Defendants Equifax and TransUnion have repeatedly supplied false consumer reports to its subscribers and attributed said data to the Plaintiff.

71.     Plaintiff advised Defendants directly, on multiple occasions, of the false data and demanded that the data be removed from its consumer reports and files of and concerning Plaintiff.

72.     Defendants failed to properly reinvestigate Plaintiff's disputes and Defendants continued to prepare false information and/or issue false consumer reports.

73.     Defendants misrepresented information to Plaintiff and further concealed information from Plaintiff.

74.     Defendants chose to continue to prepare and publish false information and/or consumer credit reports about Plaintiff.

75.     Defendants took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

76.     Likewise, Defendants Equifax and TransUnion failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit data file and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by the Defendants Equifax and TransUnion and relayed for further use, reliance and publication by their subscribers.

77.     Defendants Equifax and TransUnion failed to adopt and follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the FCRA, which they compiled, used and manipulated, in order to prepare consumer credit reports, credit scores, risk factors/denial codes and other economic and prediction data evaluations.

11

78.     Defendants failed to adopt and follow reasonable procedures to assure the proper reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data bank, as required by the FCRA.

79.     Defendants Equifax and TransUnion have continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the Plaintiff that such information was inaccurate.

80.     Defendants through their fault, as described herein, caused great and irreparable injury to Plaintiff herein.

81.     Defendants are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages under common law, states' laws and/or for willful violations of the provisions under the FCRA.

82.     Further, by violating the FCRA and using unreasonable procedures for data accuracy and integrity, Defendants likewise breached their contractual duties.

83.     As a result of the misleading and inaccurate information reported by the Defendants, the Plaintiff has suffered sustained actual damages including, financial damages, credit denials, and emotional distress.

84.     Defendants' conduct, action and inaction, was willful.

85.     Defendants' actions and inactions were negligent.

12

86.     Defendants did not have any reasonable basis to believe that the Plaintiff was responsible for the numerous accounts reported in his credit file.

87.     Defendants willfully determined to follow procedures in which it did not review, confirm or verify the identity of persons to whom it grants credit for.

88.     The Defendants' wrongful conduct has caused the Plaintiff severe emotional distress.

89.     The Defendants' conduct was clearly extreme and outrageous and would shock a reasonable person's conscience.

## COUNT ONE

*Failure to comply with 15 U.S.C. § 1681s-2 of the*
*Fair Credit Reporting Act by Defendants AES,*
*TERI and Chase*

90.     This is a count against Defendant AES, TERI, and Chase for willful and/or negligent violations of 15 U.S.C. § 1681s-2(b) of the FCRA.

91.     Plaintiff re-alleges the relevant foregoing paragraphs of this complaint as if fully set out herein.

92.     Defendants were required under 15 U.S.C. § 1681s-2(b), to respond to the request for reinvestigation by the Plaintiff by completing a diligent inquiry into the facts underlying the adverse trade-lines and providing accurate information to the credit reporting agencies regarding those trade-lines.

93.     Defendants' reinvestigations included the following duties and was required to meet the following standards:

- A review of all information provided by the credit reporting agency(es);
- A review of all information provided by the Plaintiff;
- To be conducted in good faith;
- To be conducted in such a fashion as to assure the maximum possible accuracy of the Plaintiff's consumer credit report;
- To be conducted in such a way as to not violate any of the general prerequisites of conduct under 15 U.S.C. § 1681s-2(a) or any other statutory requirement for furnishers of credit information;
- To be conducted in a reasonable fashion; and
- To be conducted based on a review of all information reasonably available to the Defendants.

94.     Following the reinvestigation, on information and belief, Defendants reported the erroneous credit information with actual knowledge of errors, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) and the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(1)(A).

95.     Following the reinvestigation, Defendants reported the erroneous credit information and consciously avoided knowing that the credit information was inaccurate, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) an the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(1)(A).

96.     Following the reinvestigation and dispatch of notice to Defendants, Defendants reported credit information that was in fact not accurate, and in violation of the FCRA, 15 U.S.C. § 1681s-2(b) an the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(1)(A).

14

97.    Following the reinvestigation and dispatch of notice to Defendants the Defendants failed to notify the consumer reporting agencies to whom it reported credit information that the debts were disputed, in violation of the FCRA, 15 U.S.C. § 1681s-2(b) an the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(1)(A).

98.    Defendants' reinvestigation was not conducted in good faith.

99.    Defendants' reinvestigation was not conducted in such a way as to insure the maximum possible accuracy of the Plaintiff's consumer report.

100.   Defendants' reinvestigation was not conducted reasonably.

101.   Defendants' reinvestigation was not conducted using all information reasonably available to Defendants

102.   Defendants' reinvestigation was *per se* deficient by reason of these failures of Defendants in its reinvestigation of the numerous student loan and credit accounts on the Plaintiff's consumer credit report.

103.   Defendants' actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles the Plaintiff to recover for damages.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Pacific for:

A.    Actual damages;
B.    Punitive damages;
C.    Statutory damages pursuant to 15 U.S.C.  §§ 1681n and/or 1681o.

15

D.   Costs and reasonable attorney's fee pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

E.   For such other and further relief as may be just and proper.

## COUNT TWO

*Failure to comply with 15 U.S.C. § 1681e(b), 1681i(a) and 1681i(a)(5) of the Fair Credit Reporting Act and State Laws by Equifax and TransUnion.*

104.   This is a count against Defendants Equifax and TransUnion for willful and negligent violations of 15 U.S.C. §§ 1681e(b), 1681i(a), 1681i(a)(5) of the FCRA and state law.

105.   Plaintiff re-alleges all the relevant foregoing paragraphs of this complaint as if fully set out herein.

106.   Defendants willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in consumer credit reports and have otherwise violated the FCRA.

107.   Defendants willfully and/or negligently refused to properly reinvestigate the Plaintiff's consumer credit report.

108.   The numerous trade-lines contained within the Plaintiff's Equifax and TransUnion reports as published by Defendants rendered those reports inaccurate.

109.   Following receipt of these consumer reports, the Plaintiff requested that Defendants reinvestigate the numerous student loan and credit card accounts that did not belong to him.

110.    As part of the reinvestigation, Defendants were required to notify the furnishers of the allegedly inaccurate collection account of the dispute in a notice.

111.    That notice was required to include all relevant information regarding the dispute that the agency has received from the consumer.

112.    As part of the reinvestigation, Defendants were required to consider and give due weight to all relevant information submitted by the Plaintiff.

113.    Defendants negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by the Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C.  § 1681i(a)(5).

114.    In response to the request for reinvestigation, Defendants did not perform a proper reinvestigation, and refused to remove the inaccurate information in violation of the requirements of the FCRA, 15 U.S.C.  § 1681i(a)(5).

115.    Defendants have maintained the numerous student loan and credit accounts on the credit reports.

116.    Defendants have negligently and/or willfully failed to conduct a proper reinvestigation of the inaccurate trade lines in violation of 15 U.S.C.  §§ 1681i, 1681n and/or 1681o.

117.    The Plaintiff suffered damages as a result of these violations of the FCRA.

118.    Defendants' actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA, and entitles the Plaintiff to recover for damages.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Equifax and TransUnion for:

A.    Actual damages;

B.    Punitive damages;

C.    Statutory damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

D.    Costs and reasonable attorney's fee pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

E.    For such other and further relief as may be just and proper.

## COUNT THREE

*Failure to comply with 15 U.S.C. § 1681b of the*
*Fair Credit Reporting Act and State Laws by Equifax,*
*TransUnion, TERI and Chase.*

119.    The relevant above and foregoing paragraphs are re-alleged as if fully set out herein.

120.    Defendants TERI and Chase impermissibly accessed Plaintiff's consumer report, including highly personal and sensitive data through Equifax and TransUnion.

121.    Defendants Equifax and TransUnion allowed the impermissible access of the Plaintiff's consumer reports.

122.    Defendants TERI and Chase had no legitimate business need or other permissible purpose for the illegal access of Plaintiff's consumer reports.

123.    Defendants TERI and Chase likewise violated their subscriber agreement, of which Plaintiff is a stipulated beneficiary, with the consumer reporting agencies.

18

124.    Defendants TERI and Chase accessed Plaintiff's consumer report under false pretenses.

125.    Defendant's TERI and Chase are "users" of credit information.

126.    Defendants TERI and Chase have been afforded, under subscriber contract, an access whereby it may, for permissible, lawful purposes, access consumer reports from Equifax, TransUnion and possibly other consumer reporting agencies.

127.    Plaintiff learned of the impermissible inquires when he reviewed his consumer reports.

128.    Plaintiff has no other dealings of any kind with Defendants TERI and Chase and TERI and Chase  lack any permissible reason for said inquiries.

129.    Defendants TERI and Chase, upon each inquiry, certified to the consumer reporting agencies and Plaintiff, that they had inquired into the Plaintiff's consumer file for a legitimate purpose when, in fact, they did not.

130.    TERI and Chase accessed Plaintiff's consumer report without any consent or knowledge of Plaintiff.

131.    TERI and Chase never notified plaintiff of the illegal and impermissible access.

132.    Plaintiff has no accounts, business dealings or other transactions of any kind with the defendants TERI and Chase.

133.    Defendants TERI and Chase negligently and/or willfully violated the FCRA by impermissibly obtaining Plaintiff's consumer report under false pretenses.

134.     Defendants Equifax and TransUnion negligently and/or willfully violated the FCRA by allowing Plaintiff's consumer report to be accessed under false pretenses.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against defendants for:

A.     Actual damages;

B.     Punitive damages;

C.     Statutory damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

D.     Costs and reasonable attorney's fee pursuant to 15 U.S.C. §§ 1681n and/or 1681o.

E.     For such other and further relief as may be just and proper.

## COUNT FOUR

### *Defamation*

135.     The relevant above and foregoing paragraphs are re-alleged as if fully set out herein.

136.     Between at least 2004 through the present, Defendants published to various credit reporting agencies, providers of credit, and others the fact that Plaintiff had over $125,000 in student loan accounts and various other credit accounts that were not his.

137.     Defendants published this information both orally and in writing.

138.     Defendants had no factual basis for making the statements. Defendants knew this because Plaintiff notified them that the student loan accounts did not belong to him and that he was a victim of identity theft.

139.   Plaintiff continued to notify Defendants by letters and telephone that the student loans and Chase accounts were not his and not authorized by him.

140.   The written publications by Defendants constitute liable per se. The verbal publications constitute slander per se.

141.   Despite Plaintiff's notice, Defendants acted with malice by attempting to coerce Plaintiff into paying for these accounts that were not his. Moreover, Defendants acted with malice by obstructing the reinvestigation of Plaintiff's consumer disputes when they advised credit reporting agencies, credit grantors, and others that the disputed accounts were that of the Plaintiff. Defendants' acts constitute express or actual malice.

142.   Defendants have defamed the Plaintiff by publishing misleading and/or inaccurate information to third parties regarding his creditworthiness.

143.   As a direct and proximate result of Defendants' defamation, Plaintiff has suffered extreme mental anguish, loss of reputation, loss of the ability to obtain credit, mental anguish, and suffering, and pecuniary damages. The losses are either permanent in nature or continuing and Plaintiff will suffer losses in the future. Defendants' actions were malicious, willful, wanton, and to the total disregard of Plaintiff's rights.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the Defendants for:

        A.     Actual damages;

        B.     Punitive damages;

        C.     For such other and further relief as may be just and proper.

## COUNT FIVE

### Negligence and Wantonness

144.    This is a count against defendants for negligence and wantonness.

145.    Plaintiff realleges the relevant forgoing paragraphs in support of this count.

146.    As stated defendants are on notice that identity theft is a nationwide problem.

147.    Defendants through their agents and employees prepared the loan applications and documents and/or credit reports at issue in this matter. Defendants negligently or wantonly hired and/or supervised their agents in the financing of student loans, consumer transactions and the prevention of identity theft by either:

(i)     Knowing or should have known of the unfitness of the agents who are described above and yet employed them or continued to employ them or used their services without proper instruction with a disregard of the rights of the plaintiff;

(ii)    Authorizing the wrongful conduct of said agents set forth hereby;

(iii)   Ratifying the wrongful conduct of the agents as set forth herein; and said wrongful acts of agents were calculated to and did benefit the defendants;

(iv)    Releasing credit reports to unauthorized users; and

(v)     Acted in an otherwise careless and negligent fashion in disregard of Plaintiff's rights.

148.    Defendants failed to employ reasonable procedures to properly supervise their employees in order to prevent the theft of plaintiff's identity, which was a foreseeable consequence and a direct result of such failure.

149.    Defendants through their actions and inactions, as described herein, caused great and irreparable injury to Plaintiff.

150.    Defendants failed to invoke necessary functions, procedures or programs designed to insure that the personal identifiers of persons such as the plaintiff would not be used in fraudulent transactions and did not employ commercially reasonable means to verify that the person signing the loan documents was not an imposter.

151.    In addition to actual or compensatory damages for its negligent conduct, defendants are liable unto Plaintiff in a sum to be assessed by the trier of fact for punitive/exemplary damages because of the reckless nature of their conduct.

22

WHEREFORE, plaintiff prays for actual damages, costs and attorney fees, punitive damages; such other relief as the Court deems proper.

**JAMES D. PATTERSON (PATJ6485)**
**EARL P. UNDERWOOD (UNDEE6591)**

Law Offices of Earl P. Underwood, Jr.
21 South Section Street
PO Box 969
Fairhope Alabama 36533
(251) 990-5558
(251) 990-0626 (Fax)

**JIM S. CALTON, JR.**

Calton & Calton
226 East Broad Street
Eufaula, AL 36027
(334) 687-3563
(334) 687-3564

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

James D. Patterson

**Please serve this complaint by certified mail.**

---

[i] *FBI Law Enforcement Bulletin,* August 2000 Issue
http://www.fbi.gov/publications/leb/2000/aug00leb.pdf
[ii] *Identity Theft: The Aftermath 2003*, Identify Theft Resource Center, Summer 2003.
http://www.idtheftcenter.org/idaftermath.pdf
[iii] See *Nowhere to Turn*, study by Privacy Rights Clearinghouse and CalPIRG. Found at
www.privacyrights.org Revised 9-03